UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT SERRA,

        Plaintiff,

v.                                         Case No. 08-10825
                                          Honorable Marianne O. Battani

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court are Plaintiff Robert Serra's Motion for Summary Judgment (Doc. #8) and Defendant Liberty Life Assurance Company of Boston's ("Liberty Life") Motion for Entry of Judgment (Doc. #9). Liberty Life is the disability insurance provider for Lowe's Companies, Inc. ("Lowe's"). Plaintiff, an employee of Lowe's, brought this action against Defendant under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 502(a)(1)(B), to recover benefits he alleges he is due.

For the reasons stated below, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

**II.    STATEMENT OF FACTS**

On July 3, 2007, Serra applied for disability benefits, claiming that it was impossible for him to perform his duties as a customer service representative in the Lawn and Garden Department of a Lowe's store in Southfield, Michigan because a

preexisting foot condition had worsened. Defendant's Disability Policy for Lowe's employees ("Lowe's Disability Policy") permits short-term benefits to be paid if the employee, "as a result of injury of sickness, is unable to perform the material and substantial duties of his own job." (Admin. R. 7.)

Subsequently, the following information was submitted to Defendant in support of Plaintiff's claim. On Defendant's "Restrictions Form," Plaintiff's family physician, Dr. Ronald Bellisario indicated that Plaintiff was capable of sedentary work on a full-time basis by checking the appropriate box. (Id. at 286.) The form, completed on August 9, 2007, defined "sedentary" work as lifting/carrying up to 10 pounds occasionally, sitting over 50 percent of the time, and standing/walking occasionally. The form defined "occasionally" as up to 20 minutes per hour and up to 2.5 hours per day. Dr. Bellisario did not list any medical or psychological findings to support the noted restrictions. Instead, he wrote "see specialist report & x-ray findings." (Id.) This apparently refers to a 2004 series of records from Dr. Allan Grant observing that "[x]-rays show a collapse of the midfoot joints at the talonavicular and calcaneal cuboid region," (id. at 299), as well as records from an August 2006 visit to a pain clinic.

Defendant forwarded the aforementioned records to Dr. Steven Miszkiewicz, a consulting physician, in order to obtain his opinion as to whether Plaintiff's foot condition would prevent from him working. Observing that "the physical exams per Dr. Bellisario are fairly normal and no gait disturbance is noted," Dr. Miszkiewicz opined on an August 14, 2007 consulting physician assessment form that Plaintiff suffered from no physical condition that would prevent him from carrying out the duties of his job. (Id. at 258.)

Defendant subsequently received additional medical records in support of Plainitiff's claim, including a letter from Dr. Matthew Ewald, and other records from 2004 to 2006. Dr. Ewald, a physician within Dr. Bellisario's practice, examined Plaintiff on August 27, 2007, and on the same day faxed a letter to Defendant explaining his findings of "a tight Achilles tendon with inability to dorsiflex to neutral," and decreased range of motion throughout the foot. He recommended that Plaintiff not work until further evaluations were completed. (Id. at 249.) No notes, records, or test results accompanied Dr. Ewald's report, and it did not indicate whether Plaintiff was disabled. Defendant submitted these new records to Dr. Miszkiewicz to see if they would alter his original assessment. On August 31, 2007, Dr. Miszkiewicz completed a second consulting physician assessment form indicating that his opinion had not changed because Dr. Ewald's opinion did not have "supporting evidence, like office notes, to support his assertions." (Id. at 228.)

Plaintiff was hospitalized in Cottage Hospital from July 5, 2007 to July 11, 2007, where he was treated for bipolar disorder. (Id. at 49.) Defendant confirmed with Cottage Hospital that Plaintiff was referred to a Dr. Gury and Eastwood Clinic for recommended follow-up treatment. (Id.) Plaintiff never made an appointment with Dr. Gury after his release from the hospital. (Id.) Eastwood Clinic advised Defendant that they had no current or recent medical records for Plaintiff. (Id.)

Defendant denied Plaintiff's application for benefits on September 5, 2007. (Id. at 214.) Defendant noted that (1) its consulting physician, Dr. Steven Miszkiewicz, so recommended after reviewing Plaintiff's medical records, (2) Dr. Bellisario's conclusion that Plaintiff could only perform sedentary work was unsupported by "objective or

3

clinical medical evidence," and (3) Plaintiff's claim of bipolar disorder did not satisfy the policy's 14-day waiting period, in part because Plaintiff did not seek follow-up treatment recommended for him by the hospital at which he was treated. (Id.) These factors led Defendant to conclude that although there was evidence to show that Plaintiff had a problem with his right foot dating back to 2003, the "medical records obtained do not support a condition that has progressed to such severity that would suddenly prevent [Plaintiff] from performing [his] job duties." (Id.) Plaintiff's counsel appealed on November 2, 2007, and Defendant's Appeals Unit upheld the original denial on December 12, 2007, noting that in spite of Plaintiff's self-reported pain, "his physical examinations were fairly normal, no gait disturbance was noted, and he was on mild medications." (Id. at 65.) The Appeals Unit found that the objective medical evidence in Plaintiff's favor on his foot claim was scarce, and noted that his bipolar disorder claim failed to meet the 14-day elimination period requirement. (Id.) The instant case challenges the Appeals Unit's decision.

Plaintiff argues that he was unfairly denied benefits because Defendant ignored his treating physicians' opinions and made its decision without conducting its own physical or psychiatric evaluations of Plaintiff. Defendant responds that it is under no obligation either to undertake examinations of Plaintiff or to accept the opinion of Plaintiff's examining physician in the absence of concrete medical evidence.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

4

movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).

**IV.   ANALYSIS**

When a district court reviews a denial of benefits under ERISA, it must review the denial *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court simply determines whether the administrator abused its discretion in denying benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Within the Sixth Circuit, a district court will find that a plan administrator abused its discretion only if its determination was arbitrary and capricious. Wendy's Int'l, Inc. v. Karsko, 94 F.3d 1010, 1012 (6th Cir. 1996).

The Lowe's Disability Policy gave Defendant, "in its sole discretion," the authority "to construe the terms of this policy to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." (Admin. R. 40.) "Because the [Lowe's Disability Policy] expressly grants the administrator discretionary authority to determine eligibility for benefits, . . . we review the administrator's decision to deny benefits using the highly deferential arbitrary and capricious standard of review." Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir. 1998).

5

After review of the administrative record, the Court holds that Defendant's determination that Plaintiff was not eligible for benefits was not arbitrary and capricious. Its decision resulted from a consulting physician's conclusion, the lack of medical evidence accompanying Dr. Bellisario's opinion that Plaintiff could perform only sedentary work, and Plaintiff's failure to satisfy the terms of the policy with respect to his claim of bipolar disorder.  Plaintiff claims that summary judgment in his favor is appropriate because Defendant did not examine Plaintiff prior to issuing its determination, afforded greater weight to its own consulting physician than to Plaintiff's examining physician, and did not request its own psychiatric evaluation of Plaintiff for his bipolar disorder claim.  The Court will now address each of these arguments in turn.

### 1.     Plaintiff's Right Foot Condition

Plaintiff argues that Defendant should have conducted a physical examination before making its determination.  (Pl.'s Br. 5-6.)  A court may consider whether a plan administrator acted arbitrarily and capriciously by relying on a consulting physician who did not physically examine the claimant.  See Kalish v. Liberty Life Assurance Co. of Boston, 419 F.3d 501, 508 (6th Cir. 2005).  Nevertheless, "reliance on a file review does not, standing alone, require the conclusion that a plan administrator acted improperly." Id. (quoting Calvert v. Firstar Fin., Inc., 409 F.3d 286, 295 (6th Cir. 2005)).

The Sixth Circuit has held that an insurance company arbitrarily and capriciously denied benefits when it relied on a consulting physician's report that lacked detail, made only conclusory assertions, was based solely on records review, did not address the plaintiff's mental disability, and contradicted but did not address the findings of the insurance company's own field investigator who found the plaintiff's assertions "highly

6

credible." Id. at 509-11. The Court finds that there was more merit to Dr. Miszkiewicz's report.

Although Dr. Miszkiewicz's report in the instant case is short, it acknowledges the contrary opinions of Drs. Bellisario and Ewald and explains why he finds them unpersuasive. Furthermore, the opinions of Drs. Bellisario and Ewald lacked support and did not meet the Lowe's Disability Policy's definition of proof, which a claimant must provide in order to be eligible for disability benefits. The policy defines proof as evidence in support of a benefits claim, including objective medical evidence such as the attending physician's standard diagnosis, chart notes, lab findings, test results, x-rays, and/or other forms of concrete evidence. (Id. at 10.)

Plaintiff claims that Defendant should have given greater weight to the opinion of Drs. Bellisario and Ewald, because they had physically examined Plaintiff. The only evidence Dr. Bellisario submitted on Plaintiff's behalf, however, was Defendant's Restrictions Form, on which the doctor checked a box indicating that he recommended Plaintiff be limited to sedentary work. With the exception of some office notes and a reference to old x-rays, no objective medical evidence was included. Dr. Bellisario did refer to a "specialist report," but this report, issued in 2004 by Dr. Grant cannot explain how and/or why Plaintiff's preexisting condition deteriorated to a point where in 2007 he could no longer work. Likewise, Dr. Ewald's August 27, 2007 letter does not satisfy the policy's definition of proof. His letter to Defendant explained his observation of "a tight Achilles tendon with inability to dorsiflex to neutral," and recommended that Serra be evaluated by a foot surgeon and a pain clinic. (Id. at 249.) Although he recommended that Plaintiff "be off work until these evaluations are complete," (id.), he did not conclude

7

that Plaintiff's injury would render him disabled.  Therefore, the professional opinions of Drs. Bellisario and Ewald do not qualify as "proof" as defined by the Lowe's Disability Policy.  Even if they did, this Court has "no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  Although a plan administrator may not arbitrarily refuse to weigh the opinion of a treating physician, id., Defendant did not act arbitrarily and capriciously in declining to credit Plaintiff's physicians over its consulting physician because of the weakness and subjectivity of the evidence in support of the opinions of Plaintiff's physicians.  Accordingly, the Court will not disturb Defendant's determination that Plaintiff was not disabled as a result of his foot injury.

    **2.**    **Plaintiff's Bipolar Disorder**

Plaintiff asserts that Defendant should have initiated a psychiatric evaluation to ascertain the validity of his claim of bipolar disorder.  (Pl.'s Br. 5-6.)  Defendant's denial of Plaintiff's bipolar disorder claim was not arbitrary and capricious because Plaintiff failed to meet his initial burden of satisfying the "elimination period," which is defined as "a period of consecutive days of Disability for which no benefit is payable."  (Admin. R. 8.)  For short-term coverage, that period is 14 days.  (Id. at 4.)  Although Defendant received records indicating that Plaintiff was hospitalized for seven days in July 2007, this fails to satisfy the 14-day requirement, and Plaintiff produced no records to show that he sought follow-up treatment.  (Id. at 49-50.)  Because there is no evidence in the record to show that Plaintiff either required or sought treatment for bipolar disorder

beyond the seven days he spent in the hospital, he did not establish that he was disabled. Therefore, Defendant did not act arbitrarily and capriciously in denying the claim, and the Court will not disturb that determination.

## V. CONCLUSION

The Court finds that Defendant's denial of Plaintiff's disability claim for his foot condition was not arbitrary and capricious because it reasonably accepted the opinion of its consulting physician in light of the weakness of Plaintiff's supporting evidence. In addition, Plaintiff did not establish that he was disabled by bipolar disorder. Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Motion for Entry of Judgment is **GRANTED**.

**IT IS SO ORDERED.**


                                              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record electronically and/or U.S. Mail.

                                              s/Bernadette M. Thebolt
                                              Case Manager